THOMAS WEATHERILL et al., Appellees, v. WM. P. WEAVER et al., Appellants.

LANDLORD AND TENANT: Rent—Option of Share Crop. A tenant who has an option to pay share rent on the happening of a named contingency must exercise his election within a reasonable time after the happening of the contingency, or right to exercise the election will be waived, and especially so where his conduct is inconsistent with the exercise of such election.  .

*Appeal from Shelby District Court.*—O. D. WHEELER, Judge.

APRIL 14, 1919.

ACTION to recover the sum of $400, claimed to be due under the provisions of a written lease. There was a directed verdict for the plaintiffs, and defendants appeal.—*Affirmed.*

*Roy Havens* and *G. W. Cullison,* for appellants.

*Edward S. White,* for appellees.

PRESTON, J.—Plaintiffs leased 80 acres of land to the defendants. The lease, the execution of which is admitted, provides that defendants were to pay plaintiffs the annual cash rent of $400, to be paid on the 15th of February, 1916, and contains this further provision:

"It is agreed that if the crop is damaged through no fault of second party (defendants) to the extent of one third, each party will take one half each, of what is raised,

in full settlement of this lease, share of first party to be delivered to market as they may direct."

Defendants alleged that the crop was damaged without their fault, to the extent of one third, and alleged their offer and continued willingness to deliver one half the crop, under the provisions of the lease, and denied their liability for the cash rent provided for in the lease, in the event the crop was not damaged. For reply, plaintiffs allege that defendants did not plant, cultivate, or care for the crop; that they planted much of it late, and plowed much of it but once; and that, if a part of said crop did not make such yield that one half thereof amounted to a fair and reasonable rent, as contemplated by the lease, it was due to the fault and neglect of defendants; that defendants have failed to bring themselves within the terms of the clause in said lease now relied on; and further, that defendants have never offered to deliver one half of what was grown on the leased premises, and have placed it beyond their power to deliver such share of said crop, and are now unable to deliver such share. It appears that defendants did not occupy the premises for the full year under the lease, ending February, 1916, but left the place late in December, 1915, or early in January, 1916. The defendants planted about 45 or 50 acres of the leased land in corn, and they contend, and they introduced evidence tending to show, that they cared for it in a good, farmlike manner, but that, owing to the weather conditions, the crop never fully matured, and was damaged by the wet and cold summer and early frost, more than one third. The plaintiffs deny that the corn crop was properly farmed by the defendants, and their evidence tends to establish that fact. The land planted in corn was laid off in 4 fields, one containing 7 acres, another 12, another 4, and another 25. It is claimed that the corn produced in this last field was more than was produced in the other 3 fields, but this is only defendants' estimate. The undisputed evidence is that only this field

was husked. · It is undisputed that, in October, after a frost, defendants turned 25 or 30 head of cattle into two fields, and 25 or 30 hogs into the third. Defendants say that, before this, they first husked through the fields with a wagon, to ascertain the yield, and their estimate is that it approximated 150 bushels in the 7 and 12 acres and 45 to 55 in the 4 acres. The 25-acre field was husked and cribbed, and yielded approximately 300 bushels, by wagon measure. A day or two before the levy of the landlord's writ of attachment was served, one of the defendants offered to deliver this corn to plaintiffs, in payment of the rent. This was about February 15, 1916, and that was the only offer made to deliver rent corn. One of the defendants testifies that the first time plaintiffs were told that their share of the corn had been cribbed was about February 15th. Prior to said date, there were negotiations between the parties, in an effort to compromise. They seemed to contemplate that defendants would be liable for the $400 cash rent unless a compromise was reached. In such negotiations, plaintiffs offered to take stock and other property, if they could agree on the basis of $300 cash rent. No agreement of settlement was reached, and the attachment was sued out. As bearing upon the question of the attempted tender of an estimated average of the corn produced, after about half of the area planted to corn had been wholly fed out by defendants, it should be stated that defendants used some 27 or 28 acres of pasture, during the season from spring until fall, in which they pastured 50 or 60 head of stock. There was no separate rent provided for this in the lease.

In ruling on the motion to direct a verdict, the trial court did not pass upon the question as to whether defendants had farmed the land properly, or whether the crop was damaged to the extent of one third, and we think the determination of this appeal turns upon other grounds. The lease is somewhat peculiar. The provision relied upon by

appellants was written in, in pencil, in a printed lease. Under the lease, the rent was primarily payable in cash, with an alternative provision that, under certain conditions, each party would take one half of what was raised, plaintiffs' share to be delivered to the market, as directed. We think this provision was for the benefit of the tenants, the defendants; the plaintiffs, the landlords, could not insist on this provision. Had the crop been damaged to the extent of one third, and plaintiffs had gone to defendants, and suggested that they be given one half of the crop in place of the $400, defendants would have had the right to say that, because of the higher price of corn, had such been the fact, they would keep the corn, and pay the $400. The tenant, then, had the right, sometime during the year, to determine whether he would pay the cash rent or a share of the corn. He knew, long before the frost, that, because of the wet weather, as he claimed, there would be a small crop. The defendants did not comply with their lease, in regard to the delivery of the corn, and the first time this was mentioned was about the middle of February. Nor did defendants, until about that time, indicate that they desired plaintiffs to take one half the crop. At that time, it was beyond their power to deliver one half the crop. We think it was the duty of defendants to have made their election, or to have indicated what they desired to do, within a reasonable time after they knew that situation. The crop was not divided, nor pretended to be divided. Until that time, plaintiffs did not know that defendants desired them to take a share of the corn. Plaintiffs had no way to determine in February whether one third of the crop had failed, or to determine what one half of the crop would be, nor could defendants do so. The plaintiffs did not agree in the lease to take the tenants' estimate of the crop, or that defendants should ignore the lease as to delivery, turn their stock into the corn, and then say to plaintiffs that they must take what was left.

We think this was hardly fair dealing by the defendants. It was within the power of the defendants, at the proper time, to have obviated the difficulty. Furthermore, long before this, the defendants had turned their stock into the corn; and we think that, by this and their other conduct, they elected not to avail themselves of the provision in the lease which they now rely on. The evidence in regard to these matters is not in dispute. A case somewhat analogous is *Dassance v. Cold*, 101 Iowa 610.

We are of opinion that the trial court ruled correctly, and the judgment is, therefore,—*Affirmed*.

LADD, C. J., EVANS and SALINGER, JJ., concur.